JAMES A. MILLER & wife *vs.* JAMES B. CONGDON, Executor.

The mere mental determination of an executor to appropriate property or securities in his hands as such, to himself as trustee under the will, is not such a setting apart as will cause a loss or depreciation of the trust fund to fall upon the *cestui que trust;* or entitle the executor to any separate compensation for his services as trustee.

In an action against an executor for the balance of a legacy, the amount due is to be stated by making annual rests, adding the interest each year to the principal, and deducting the payments made during the year, and making the residue a new capital.

ACTION OF CONTRACT by James A. Miller and Elizabeth F Miller, his wife, to recover the unpaid balance of a legacy bequeathed to her by the will of Peleg Clark, her father, of which the defendant was executor. Trial in Bristol at November term 1858, before *Merrick,* J., who made a report thereof to the full court, the material part of which is stated in their opinion.

*T. M. Stetson,* for the plaintiffs.

*J. H. Clifford & J. C. Stone,* for the defendant.

HOAR, J. The principal question in this case is, whether the female plaintiff, who was entitled to a legacy under a will of which the defendant is executor, which legacy, by the terms of the will, was to be retained by the executor until she should arrive at the age of twenty one years, the interest to be in the mean time paid to her, or applied to her use, and the principal then to be paid to her, is obliged to receive, in part payment of her legacy, a note of the Vermont Central Railroad Company, secured by bonds of the same company, which is now wholly worthless. The estate of the testator being sufficient to pay this and all other legacies, it is obvious that no depreciation of any part of his estate in the hands of the executor can affect her right to the full payment of her legacy in money, unless that particular property has been appropriated and set apart for her use in satisfaction of the legacy. The defendant contends that this note had been thus appropriated, while it was of the full value which upon its face it purports to be, and before the credit of the promisor had been in any degree impaired.

It has been settled by a series of decisions, in this common-

wealth, when an executor is, by express terms of the will, or by necessary implication, made a trustee of any part of the estate of the testator, with the obligation to invest and pay out the income thereof, that it is his province and duty to separate the same from the mass of the testator's property, and to invest it safely in some secure and productive stock, or at interest on good security. *Dorr* v. *Wainwright*, 13 Pick. 328, and cases there cited. And in the same class of cases it has been held, " that, if the executor shall in this respect act with strict fidelity and due diligence, he will not be responsible should any loss happen, either of principal or interest." *Dorr* v. *Wainwright*, 13 Pick. 332. *Brown* v. *Kelsey*, 2 Cush. 248. *Hubbard* v. *Lloyd*, 6 Cush. 524.

It has been also held, that where the executor is thus entitled to act in a double capacity, he will be required to account in his capacity of executor, and the sureties in his bond as executor will be liable for the faithful discharge of his duties as trustee, unless, for greater convenience and with the assent of the judge of probate, he chooses to open a new account as trustee ; in which event he must give a new bond as trustee, and transfer to his account as trustee the property to be held and administered by him in that character, before his liability as executor will terminate. *Prior* v. *Talbot*, 10 Cush. 1.

We come, then, to the consideration of the question, whether, upon the evidence reported, there has been any such valid ap- propriation of the note in question, that it became and was, in the hands of the executor, property set apart and held by him in his capacity as trustee, for the use of the plaintiff, the *cestui que trust*, so that any loss or depreciation which has occurred respecting it must fall upon her, and not upon the whole estate in his hands as executor.

The legacy to the plaintiff was of $4,000, and the proceeds of some personal property. The testator, at the time of his death, held a note of $3,000, to which the Vermont Central Railroad Company was a party ; and another party to the same note having afterwards failed, the executor, acting in good faith and with reasonable and sufficient cause to believe that he was

receiving a good note, and fully secured, took in payment of it three notes of the Vermont Central Railroad Company, namely, two of $1000 each, and one of about $1100 and, as collateral security, four bonds of the said company of $1000 each, secured by a second mortgage of the franchise and property of said company. One of these notes for $1000 is the note in controversy.

It further appears by the testimony of the defendant, (a gentleman in whose character and truthfulness the plaintiffs have such confidence that they agree that all his statements shall be taken as absolutely true,) " that the reason why he took the three promissory notes as aforesaid of the said Vermont Central Railroad Company, instead of one note for the whole amount due on said promissory note for three thousand dollars, was, that he knew that there were several legacies under said will to be paid to several legatees at a future day, as appears by the provisions contained in said will, and believed that it was his duty, as executor, to provide or set apart, out of the assets of said estate, separate funds for the payment of said several legacies; and that, to enable himself to do so, it would be useful and convenient to have the amount, due on said promissory note for three thousand dollars, secured and payable in three promissory notes of the said several amounts for which the said three promissory notes were taken by him of said Vermont Railroad Company as aforesaid; and that at some time after he did as aforesaid take and receive the said three promissory notes, but at what particular time he could not recollect or state, *he did, in his own mind, set apart and appropriate* the said promissory note for one thousand dollars of the Vermont Railroad Company, mentioned and specified in his said answer, *to be and constitute a part of the fund for the payment of the said legacies to the plaintiff,* and that, from and after that time when he so determined to set apart and apply the said promissory note for that purpose, he always kept and retained the said note, together with the said bond taken as collateral security for the payment thereof, as a part of the fund belonging to her, as for the payment of the legacies due to her ; and that he kept and retained the same for no other purpose, and with no other

intent whatever. But he never made any entry of said note on any book or on any account, and had kept no account of the assets of which the said fund was composed, or was to consist; and the said promissory note constituted a part of said fund, and was appropriated solely to the payment of said legacies to the plaintiff, only by the said determination to this effect in his own mind as aforesaid." He further testified, "that he had never made any settlement of his account, or rendered any account of his proceedings as executor as aforesaid, in the probate office, that no legal proceedings had ever been had in relation to his appointment as trustee of the plaintiff, otherwise than by his appointment to, and acceptance of, his said office of executor; that he had been duly appointed as guardian of the plaintiff, but that he had never kept or made any account of funds or property in his hands as such guardian."

It is argued, on behalf of the defendant, that, however questionable this evidence might be if it were contested, the agreement that all his statements should be regarded as facts fully proved establishes the fact beyond controversy that he had made the appropriation, and that the property thereupon ceased to belong to the general estate, and became a special trust fund for the benefit, and at the risk, of the plaintiff. But the court are of opinion that it still remains their duty to determine, whether the appropriation to which he testifies is such an appropriation as the law requires, in order to produce that result. The executor did no act whatever to effect such an appropriation, or transmute the property. Giving the fullest effect to his testimony, all that he did was "in his own mind." In our judgment, this is not an appropriation which the law will recognize. To produce such an important change in the rights of parties, there should certainly be some decisive, intelligible and irrevocable act; and a mere purpose, or mental determination, is not sufficient. However respectable and trustworthy this defendant may be, the rules of law in reference to the administration of trusts must be so applied as to afford some reasonable protection against men who are not honest. If the executor had died, or if the investment he had made of the money had

been in property which had increased in value, what security would there have been for the rights of the beneficiary ?

In *Hall* v. *Cushing*, 9 Pick. 395, it was held that an executor, who is also a trustee under the will, cannot be considered as holding any part of the assets in the latter capacity, until he has settled an account at the probate office as executor, in which he is credited as executor with the amount which he holds as trustee.   In *Newcomb* v. *Williams*, 9 Met. 534, the court say that the change of property from the executor to the trustee, in cases where the executor and trustee are the same person, might be shown " by any authoritative and notorious act."   The same principle was stated in *Conkey* v. *Dickinson*, 13 Met. 53.

In *Hubbard* v. *Lloyd*, 6 Cush. 522, which is the case principally relied on by the defendant's counsel, it is stated that the executors had " set apart $50,000, to constitute a trust fund to be held by them as trustees under the will," the income to be paid to Mrs. Greene during her life, and the remainder to her children ; and that this sum was " invested for her account." The question in that case was, whether the executors could thereupon proceed to settle the rest of the estate, and close their account as executors ; but no point was made as to the sufficiency and notoriety of the act of appropriation.   No authority has been found or suggested which sustains this defence, and we cannot recognize or adopt the doctrine upon which it rests.

The other points in the case are easily disposed of, and indeed seem to follow the decision of the principal question.

As there had been no legal separation of the trust fund from the mass of the testator's estate, the defendant cannot be allowed any separate compensation for his services as trustee, and must be compensated for any services which he has rendered by his general allowance as executor.   *Brown* v. *Kelsey*, 2 Cush. 248.

The account of the sum due from the executor must also be estated by adding the interest each year to the principal, deducting the payments made during the year, and taking the balance for the next year's principal.   *Boynton* v. *Dyer*, 18 Pick. 8.

Ascertaining the sum due upon the foregoing principles, either by the agreement of the parties, or by an assessor appointed by the court, if they do not agree, the defendant is to be defaulted, and for the sum thus ascertained

*Judgment to be for the plaintiffs.*